1  BENJAMIN B. WAGNER
   United States Attorney
2  AUDREY B. HEMESATH
   Assistant United States Attorney
3  501 I Street, Suite 10-100
   Sacramento, CA 95814
4  Telephone: (916) 554-2700

5

   Attorneys for Plaintiff
6  United States of America



FILED

SEP 4 2015

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
       DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:15-CR-169 GEB |
|---|---|
| Plaintiff, | PLEA AGREEMENT |
| v. | DATE: SEPTEMBER 4, 2015<br>TIME: 9:00 AM |
| TISHA LOUISE TRITES, | COURT: HON. GARLAND E. BURRELL, JR. |
| Defendant. | |

### I. INTRODUCTION

**A.  Scope of Agreement.**

The information in this case charges the defendant with violation of 18 U.S.C. § 493 Bonds and Obligations of Certain Lending Agencies (Count One). This document contains the complete plea agreement between the United States Attorney's Office for the Eastern District of California (the "government") and the defendant regarding this case. This plea agreement is limited to the United States Attorney's Office for the Eastern District of California and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

**B.  Court Not a Party.**

The Court is not a party to this plea agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of defendant, including activities which may not have been charged in

PLEA AGREEMENT                                  1

the information. The Court is under no obligation to accept any recommendations made by the government, and the Court may in its discretion impose any sentence it deems appropriate up to and including the statutory maximum stated in this plea agreement.

If the Court should impose any sentence up to the maximum established by the statute, the defendant cannot, for that reason alone, withdraw her guilty plea, and she will remain bound to fulfill all of the obligations under this plea agreement. The defendant understands that neither the prosecutor, defense counsel, nor the Court can make a binding prediction or promise regarding the sentence she will receive.

## II.   DEFENDANT'S OBLIGATIONS

### A.   Guilty Plea.

The defendant will plead guilty to 18 U.S.C. § 493 Bonds and Obligations of Certain Lending Agencies (Count One). The defendant agrees that she is in fact guilty of these charges and that the facts set forth in the Factual Basis for Plea attached hereto as Exhibit A are accurate.

The defendant agrees that this plea agreement will be filed with the Court and become a part of the record of the case. The defendant understands and agrees that he will not be allowed to withdraw her plea(s) should the Court not follow the government's sentencing recommendations.

The defendant agrees that the statements made by her in signing this Agreement, including the factual admissions set forth in the factual basis, shall be admissible and useable against the defendant by the United States in any subsequent criminal or civil proceedings, even if the defendant fails to enter a guilty plea pursuant to this Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent that these rules are inconsistent with this paragraph or with this Agreement generally.

   1.   Waiver of Indictment:

The defendant acknowledges that under the United States Constitution she is entitled to be indicted by a grand jury on the charges to which she is pleading guilty and that pursuant to Fed.R.Crim.P. 7(b) she agrees to waive any and all rights she has to being prosecuted by way of indictment to the charges set forth in the information. The defendant agrees that at a time set by the Court, she will sign a written waiver of prosecution by Indictment and consent to proceed by

Information rather than by Indictment.

    2.    Package Agreement:

The defendant acknowledges and understands that the plea offer made to her here by the government is a "package offer." That is, the defendant understands that the offer made to her is conditioned on co-defendant Todd Smith pleading guilty according to the terms of his respective plea offer. The defendant understands that if this co-defendant declines, refuses or fails to plead guilty according to her respective offer, then, at the option of the government, the defendant will not be allowed to enter a plea of guilty to the offer made to her by the government. Additionally, if co-defendant Todd Smith fails or refuses to enter his plea according to his respective offer and the defendant has already entered her plea, then this plea agreement is voidable at the option of the government. In this event, in its sole discretion, the government has the ability to withdraw from the plea agreement with the defendant and pursue the original charges as to this defendant. However, the defendant's waiver of her rights under Rule 11(f) and Fed. R. Evid. 410, as set forth in Section II.A herein, will not operate.

Recognizing that this is a package offer, the defendant confirms that she has not been threatened, pressured, or coerced by any other person, including the co-defendant, to enter into this plea agreement. The defendant also confirms that she enters into this plea agreement voluntarily because she is in fact guilty of the offenses to which she is pleading guilty.

**B.**    **Restitution.**

The Mandatory Victim Restitution Act requires the Court to order restitution to the victims of certain offenses. Defendant agrees that his conduct is governed by the Mandatory Restitution Act pursuant to 18 U.S.C. § 3663A(c)(1)(A)(ii) and agrees to pay the full amount of restitution to all victims affected by this offense, including, but not limited to, the victims covered in the factual basis and other victims as a result of the defendant's conduct for the offenses charged from the periods of April 22, 2010 through November 18, 2011. The amount of restitution will be between $7 and 9 million. Defendant has agreed to make an initial payment of $25,000 or one-quarter of the ultimate restitution award, whichever is lower, forty-five days after sentencing. Restitution payments shall be by cashier's or certified check made payable to the Clerk of the Court.

**C. Fine.**

Defendant reserves the right to argue that she is unable to pay a fine.

**D. Special Assessment.**

The defendant agrees to pay a special assessment of $100 at the time of sentencing by delivering a check or money order payable to the United States District Court to the United States Probation Office immediately before the sentencing hearing. The defendant understands that this plea agreement is voidable at the option of the government if she fails to pay the assessment prior to that hearing.

**E. Violation of Plea Agreement by Defendant/Withdrawal of Plea(s).**

If the defendant, cooperating or not, violates this plea agreement in any way, withdraws her plea, or tries to withdraw her plea, this plea agreement is voidable at the option of the government. The government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. One way a cooperating defendant violates the plea agreement is to commit any crime or provide any statement or testimony which proves to be knowingly false, misleading, or materially incomplete. Any post-plea conduct by a defendant constituting obstruction of justice will also be a violation of the agreement. The determination whether the defendant has violated the plea agreement will be under a probable cause standard.

If the defendant violates the plea agreement, withdraws her plea, or tries to withdraw her plea, the government shall have the right (1) to prosecute the defendant on any of the counts to which she pleaded guilty; (2) to reinstate any counts that may be dismissed pursuant to this plea agreement; and (3) to file any new charges that would otherwise be barred by this plea agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge, including perjury, false statements, and obstruction of justice. The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

By signing this plea agreement, the defendant agrees to waive any objections, motions, and defenses that the defendant might have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this plea agreement may be commenced in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this plea agreement and the commencement of any such prosecutions.

The defendant agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment to any counts that were not time-barred as of the date of this plea agreement.

In addition, (1) all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this plea agreement, shall be admissible in evidence in any criminal, civil, or administrative proceedings hereafter brought against the defendant; and (2) the defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule, that statements made by the defendant before or after this plea agreement, or any leads derived therefrom, should be suppressed. By signing this plea agreement, the defendant waives any and all rights in the foregoing respects.

### F.     Asset Disclosure.

The defendant agrees to make a full and complete disclosure of her assets and financial condition, and will complete the United States Attorney's Office's "Authorization to Release Information" and "Financial Affidavit" within five (5) weeks from the entry of the defendant's change of plea. The defendant also agrees to have the Court enter an order to that effect. The defendant understands that this plea agreement is voidable at the option of the government if the defendant fails to complete truthfully and provide the described documentation to the United States Attorney's office within the allotted time.

### G.     Agreement to Cooperate.

The defendant agrees to cooperate fully with the government and any other federal, state, or local law enforcement agency, as directed by the government. As used in this plea agreement, "cooperation" requires the defendant: (1) to respond truthfully and completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding; (2) to attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order; (3) to produce voluntarily any and all documents, records, or other tangible evidence requested by the

government; (4) not to participate in any criminal activity while cooperating with the government; and (5) to disclose to the government the existence and status of all money, property, or assets, of any kind, derived from or acquired as a result of, or used to facilitate the commission of, the defendant's illegal activities or the illegal activities of any conspirators.

### III.     THE GOVERNMENT'S OBLIGATIONS

#### A.     Recommendations.

1. Acceptance of Responsibility.

The government will recommend a two-level reduction (if the offense level is less than 16) or a three-level reduction (if the offense level reaches 16) in the computation of her offense level if the defendant clearly demonstrates acceptance of responsibility for her conduct as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in conduct that constitutes obstruction of justice within the meaning of U.S.S.G § 3C1.1, either in the preparation of the pre-sentence report or during the sentencing proceeding.

2. Reduction of Sentence for Cooperation.

The government agrees to recommend at the time of sentencing that the defendant's sentence of imprisonment be reduced by up to 50% of the applicable guideline sentence if she provides substantial assistance to the government, pursuant to U.S.S.G. § 5K1.1. The defendant understands that she must comply with paragraphs II.G and not violate this plea agreement as set forth in paragraph II.E herein. The defendant understands that it is within the sole and exclusive discretion of the government to determine whether the defendant has provided substantial assistance.

The defendant understands that the government may recommend a reduction in her sentence of less than 50% or no reduction at all; depending upon the level of assistance the government determines that the defendant has provided.

The defendant further understands that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this plea agreement confers no right upon the defendant to require that the government make a § 5K1.1 motion, and that this plea agreement confers no remedy upon the defendant in the event that the government declines to make a § 5K1.1 motion. In

PLEA AGREEMENT                                6

particular, the defendant agrees not to try to file a motion to withdraw her guilty plea(s) based on the fact that the government decides not to recommend a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

If the government determines that the defendant has provided further cooperation within one year following sentencing, the government may move for a further reduction of her sentence pursuant to Rule 35 of the Federal Rules of Criminal Procedure.

**B.     Use of Information for Sentencing.**

The government is free to provide full and accurate information to the Court and Probation, including answering any inquiries made by the Court and/or Probation and rebutting any inaccurate statements or arguments by the defendant, her attorney, Probation, or the Court. The defendant also understands and agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentence that the Court may impose.

Further, other than as set forth above, the government agrees that any incriminating information provided by the defendant during her cooperation will not be used in determining the applicable guideline range, pursuant to U.S.S.G. § 1B1.8., unless the information is used to respond to representations made to the Court by the defendant, or on her behalf, that contradict information provided by the defendant during her cooperation.

**C.     Remand**

The government agrees not move to remand the Defendant at the entry of her plea. The government reserves the right to move to remand the Defendant based on any future discovery of evidence of defendant's flight risk, danger, violation of conditions, or violation of any law. The Defendant understands that it is the Court, not the government, that decides her custody status.

## IV.     ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements of the offense to which the defendant is pleading guilty:

**18 U.S.C. § 493 – Falsely Made Writings of Certain Lending Agencies**

First, that the defendant falsely made a writing;

Second, said writing was in imitation of a writing issued by a lending association authorized or

PLEA AGREEMENT                                        7

acting under the laws of the United States.

**18 U.S.C. § 2 – Aiding and Abetting**

First, someone falsely made a writing in imitation of a writing issued by a lending association authorized or acting under the laws of the United States;

Second, that the defendant knowingly and intentionally aided, counseled, commanded, induced, or procured that person to commit each element of the false making of the writing; and

Third, that the defendant acted before the crime was completed.

The defendant fully understands the nature and elements of the crimes charged in the information to which she is pleading guilty, together with the possible defenses thereto, and has discussed them with her attorney.

### V. MAXIMUM SENTENCE

**A.  Maximum Penalty.**

The maximum sentence that the Court can impose under 18 U.S.C. § 493 is 10 years of incarceration, a fine of $250,000, a 3 year period of supervised release and a special assessment of $100. By signing this plea agreement, the defendant also agrees that the Court can order the payment of restitution for the full loss caused by the defendant's wrongful conduct. The defendant agrees that the restitution order is not restricted to the amounts alleged in the specific count to which she is pleading guilty. The defendant further agrees, as noted above, that she will not attempt to discharge in any present or future bankruptcy proceeding any restitution imposed by the Court.

**B.  Violations of Supervised Release.**

The defendant understands that if she violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require the defendant to serve up to 2 additional years imprisonment.

### VI. SENTENCING DETERMINATION

**A.  Statutory Authority.**

The defendant understands that the Court must consult the Federal Sentencing Guidelines and must take them into account when determining a final sentence. The defendant understands that the Court will determine a non-binding and advisory guideline sentencing range for this case pursuant to the

PLEA AGREEMENT                         8

Sentencing Guidelines and must take them into account when determining a final sentence. The defendant further understands that the Court will consider whether there is a basis for departure from the guideline sentencing range (either above or below the guideline sentencing range) because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The defendant further understands that the Court, after consultation and consideration of the Sentencing Guidelines, must impose a sentence that is reasonable in light of the factors set forth in 18 U.S.C. § 3553(a).

B. **Stipulations Affecting Guideline Calculation.**

The government and the defendant agree that there is no material dispute as to the following sentencing guidelines variables and therefore stipulate to the following:

1. Base Offense Level: 6 (U.S.S.G. § 2B1.1(a)(2))

2. Intended Loss Amount: between $25 million and $64.9 million, +22 (U.S.S.G. § 2B1.1(b)(1))

3. Additional Specific Offense Characteristics:

   a. Sophisticated means, +2 (U.S.S.G. § 2B1.1(b)(10)(C));

   b. Misrepresentation that acting on behalf of a religious organization +2 (U.S.S.G. § 2B1.1(b)(9)(A)

4. Role in the Offense Adjustment: Leader, +4 (U.S.S.G. §3B1.1)

5. Adjusted Offense Level: 36

6. Acceptance of Responsibility: See paragraph III.A.1 above

7. Departures: The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments (other than the decrease for "Acceptance of Responsibility"), or cross-references, except that the government may move for a departure or adjustment based on the defendant's cooperation (§5K1.1) or post-plea obstruction of justice (§3C1.1). The defense reserves the right to seek a variance from the Sentencing Guidelines under United States v. Booker, 543 U.S. 220 (2005).

VII. **WAIVERS**

A. **Waiver of Constitutional Rights.**

The defendant understands that by pleading guilty she is waiving the following constitutional rights: (a) to plead not guilty and to persist in that plea if already made; (b) to be tried by a jury; (c) to be assisted at trial by an attorney, who would be appointed if necessary; (d) to subpoena witnesses to

PLEA AGREEMENT                             9

testify on her behalf; (e) to confront and cross-examine witnesses against her; and (f) not to be compelled to incriminate herself.

### B. Waiver of Appeal and Collateral Attack.

The defendant understands that the law gives the defendant a right to appeal her guilty plea, conviction, and sentence. The defendant agrees as part of her plea(s), however, to give up the right to appeal the guilty plea, conviction, and the sentence imposed in this case as long as the sentence does not exceed the statutory maximums for the offenses to which she is pleading guilty. The defendant specifically gives up the right to appeal any order of restitution the Court may impose.

Notwithstanding the defendant's waiver of appeal, the defendant will retain the right to appeal if one of the following circumstances occurs: (1) the sentence imposed by the District Court exceeds the statutory maximum; and/or (2) the government appeals the sentence in the case. The defendant understands that these circumstances occur infrequently and that in almost all cases this Agreement constitutes a complete waiver of all appellate rights.

In addition, regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims.

## VIII. ENTIRE PLEA AGREEMENT

Other than this plea agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to writing and signed by the defendant, counsel for the defendant, and counsel for the United States.

IX.     **APPROVALS AND SIGNATURES**

A.   **Defense Counsel.**

I have read this plea agreement and have discussed it fully with my client. The plea agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this plea agreement.

Dated:

SEAN RIORDAN
Assistant Federal Defender

Attorney for Defendant

B.   **Defendant:**

I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines that may apply to my case. No other promises or inducements have been made to me, other than those contained in this plea agreement. In addition, no one has threatened or forced me in any way to enter into this plea agreement. Finally, I am satisfied with the representation of my attorney in this case.

Dated: 9/4/15

TISHA LOUISE TRITES
Defendant

C.   **Attorney for United States:**

I accept and agree to this plea agreement on behalf of the government.

Dated: September 4, 2015

BENJAMIN B. WAGNER
United States Attorney

AUDREY B. HEMESATH
Assistant United States Attorney

PLEA AGREEMENT                           11

EXHIBIT "A"

Factual Basis for Plea(s)

If this matter proceeded to trial, the government would prove the following facts beyond a reasonable doubt:

Between on or about April 22, 2010 and November 11, 2011, in the State and Eastern District of California and elsewhere, Tisha Louise Trites conspired with Todd Smith and others to carry out a scheme to defraud. The members of the conspiracy orchestrated a nationwide mortgage fraud scheme in which they recruited distressed homeowners with the promise of relief from foreclosure via a "mortgage elimination program." The conspirators offered homeowners the protection of two purported spiritual organizations: Shon-te-East-a, Walks With Spirit, and the Pillow Foundation. Typically in the scheme, the homeowners would sign paperwork to give the impression that they had donated their homes to either Shon-te-East or Pillow Foundation.

Once the homeowner enrolled with Shon-te-East or Pillow Foundation, Trites and others sent correspondence to the financial institution(s) that held a deed of trust on the home. Their letters purported to challenge the validity of the homeowner's mortgage loan. In many instances, the lender would reply to the correspondence, confirming that the loan remained valid and owing. Nevertheless, Trites and others would cause to be recorded at the County Recorder's Office a sham deed of trust, giving the impression that the homeowner had refinanced the mortgage loan with a new lender. In reality, the new lender was a fake, and the homeowner owed no money to the purported new lender.

Next, Trites and her co-conspirators created and caused to be created sham deeds of reconveyance, falsely stating that the true deed of trust by the real financial institution holding the mortgage on the house had been repaid. Trites and her co-conspirators recorded and caused to be recorded these falsely made deeds of reconveyance at the County Recorder's Office. As well, if the financial institution that was the true lienholder on the house had begun foreclosure proceedings, the conspirators falsely made a third fraudulent document: a notice of rescission of notice of default. This third fraud document was also recorded at the County Recorder's Office. The effect of these three fraud documents on each property was to give the appearance that the title to the house was clear, and the only lien on the property was the sham lien placed by the conspirators.

Trites and her co-conspirators then caused the sale of the house. Trites and others represented the sale in escrow to be a short sale, because the fake lender was willing to accept much less than the loan amount indicated in the falsely made deed of trust. Via a demand letter in escrow, the conspirators typically indicated the amount they would accept through the sale of the house, via a wire payment to one of their bank accounts. Trites and her co-conspirators then split the sales proceeds per a prearranged agreement.

Trites and her co-conspirators successfully sold 37 properties through the "mortgage elimination program," and took steps toward the sale of an additional approximately 133 properties. The financial institutions received no notice that the sham recorded documents had been filed. In many instances, the financial institutions proceeded or attempted to proceed with foreclosure. The result was a clouded title for the new buyer of the home, uncertainty in the ownership of the home, and in many instances, extensive and costly litigation for the financial institutions, escrow agents, and new buyers. Title insurance companies were forced to pay in excess of $8 million in policy payments.

One property that Trites and her co-conspirators put through the "mortgage elimination program" was a house located at 319 Marsalla Drive in Folsom, California. On or about July 26, 2005, homeowner M.C. obtained a loan of approximately $311,500 from World Savings Bank, a financial institution and lending association insured by the Federal Deposit Insurance Corporation. A deed of trust in that amount was recorded at the Sacramento County Recorder's officer on or about July 26, 2005. On or about August 3, 2006, M.C. opened a home equity line of credit ("HELOC") of $20,000

PLEA AGREEMENT                                       A-1

from World Savings Bank. The HELOC was secured by a second deed of trust, also recorded at the Sacramento County Recorder's Office.

In or about October 2010, M.C. was financially distressed and seeking assistance. M.C. was recruited into and joined the "mortgage elimination program," applying to join the Pillow Foundation and signing a contract with CCTT, an entity operated by Trites and a co-conspirator. On December 22, 2010, Trites and others caused to be recorded at the Sacramento County Recorder's Office a fraudulent Deed of Trust, indicating that lender Golden Hills Trust loaned M.C. $325,000, secured against the Marsalla Drive property. M.C. did not actually owe Golden Hills Trust. The loan indicated in the Deed of Trust was fictitious. M.C. never paid any mortgage or loan payments to Golden Hills Trust.

On or about February 15, 2011, Trites and others caused to be recorded a falsely made Substitution of Trustee and Deed of Reconveyance at the Sacramento County Recorder's Office. On the document, D.Y., an "authorized representative" of Wells Fargo Bank, National Association, formerly known as World Savings Bank, purports to reconvey to M.C. all of its interest in the property, falsely stating that the mortgage debt had been fully paid. D.Y. did not work for and was not an authorized representative of Wells Fargo. Wells Fargo did not reconvey its interest in the property to M.C. Wells Fargo Bank, N.A. is a lending association authorized and acting under the laws of the United States.

On or about March 1, 2011, Trites and others caused to be recorded a falsely made Substitution of Trustee and Deed of Reconveyance at the Sacramento County Recorder's Office. In the document, L.P., an "authorized representative" of Wells Fargo Bank, formerly known as World Savings Bank, purports to reconvey to M.C. all of its interest in the property, falsely stating that the HELOC had been fully paid. L.P. did not work for and was not an authorized representative of Wells Fargo. Wells Fargo did not reconvey its interest in the property to M.C.

Trites and her co-conspirators arranged for the sale of the Marsalla Drive property. M.C. entered a residential short sale purchase agreement in which a buyer agreed to purchase Marsalla Drive for approximately $187,000. Trites and her co-conspirators caused to be submitted to the escrow agent a demand letter requesting that Golden Hills Trust be wired $173,706.30, to a Bank of America bank account maintained by Golden Hills Trust in South Lake Tahoe, California. A wire transfer of $173,824.55 was sent to the Golden Hills Trust bank account on May 31, 2011. On June 3, 2011, a co-conspirator transferred a portion of the sales proceeds, $59,696.71, to a Bank of America bank account named CCTT Group and controlled by Trites and a co-conspirator. On June 6, 2011, Trites transferred $24,390 from the CCTT Group bank account to a Bank of America bank account named RSF Group, controlled by Trites and Todd Smith, for their personal use.